UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE WRIGHT, #337007,

        Petitioner,

                            CASE NO. 16-CV-12693
v.                              HONORABLE MARK A. GOLDSMITH

STEVEN RIVARD,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Following a jury trial in the Macomb County Circuit Court, Eddie Wright ("Petitioner") was convicted of assault with intent to commit murder, Mich. Comp. Laws § 750.83; carrying a concealed weapon, Mich. Comp. Laws § 750.227(2); felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of 10 ½ to 20 years imprisonment on the assault, concealed weapon, and felon in possession convictions and a term of two years imprisonment on the felony firearm conviction to be served consecutively to the assault conviction but concurrently to the other convictions in 2014. In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence and the validity of his sentence. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

# I. BACKGROUND

Petitioner's convictions arise from the attempted shooting of Sheikh Nyang following an altercation on Hudson Street in Warren, Michigan on June 2, 2013. The trial testimony revealed that a fight involving Petitioner and Nyang occurred on the outskirts of Nyang's driveway, following Petitioner's threats to kill Nyang and his family. While Nyang's two young daughters played in the front yard, Nyang and his wife were in the driveway vacuuming the inside of their car when Nyang heard Petitioner say, "I'm going to kill you and your kids." 1/8/14 Trial Tr., pp. 41-42 (Dkt. 7-6). Nyang did not recognize the man and responded, "What"? As Petitioner approached Nyang, he again threatened to kill Petitioner and his children. Id. at 45.

When Petitioner was within six steps of Nyang, he pulled out a gun from the inside of his pants, racked the chamber, and pointed it at Nyang's head. Id. at 47. Nyang's wife screamed as she rushed her children into the backyard. Id. at 50, 77, 79. While continuing to point the gun at Nyang, Petitioner pulled the trigger, but the gun jammed. Id. at 50. Nyang heard the click and could see the hollow point bullet protruding from the magazine. Id. at 50-51. Petitioner attempted to clear the jam by racking the slide again, but Nyang did not give him a second chance. Id. at 54. Nyang lunged toward Petitioner and they wrestled each other on the ground. Id. Petitioner smelled like alcohol. Id. Petitioner continued to try to chamber another round. Id. at 50. Nyang managed to swipe the gun away from Petitioner. Id. A woman, later identified as Petitioner's wife, Malesa Wright, drove up to the scene. Id. at 51. She yanked Petitioner into the passenger side of her car and sped away. Id. at 54.

During the altercation, one of Nyang's neighbors, a woman named Tamika Watkins, called the police. Id. at 55. Watkins saw the entire incident as it occurred, which prompted her to call

911. 1/9/14 Trial Tr., pp. 8-15 (Dkt. 7-7). Watkins told the police dispatcher the getaway car's make, model, and license plate number. Id. at 19.

The police arrived on the scene shortly after the incident. 1/8/14 Trial Tr., pp. 100-01 (Dkt. 7-6). Warren Police Officer David Huffman interviewed Nyang, Nyang's wife, Tamika Watkins, and another neighbor. Id. at 102-03. Huffman went to a nearby house to look for the perpetrator, but no one responded so he began canvassing the area looking for the getaway car. Id. at 104. Officer Huffman located the car and saw a woman matching the getaway driver's description on the porch. Id. at 107. Huffman spoke with her and learned that she was Petitioner's wife. 1/9/14 Trial Tr., p. 56 (Dkt. 7-7). She admitted that a man gave her a gun that day, which she put on the passenger floor of her car. Id. at 57. She told Huffman that Petitioner was home and called him outside. 1/8/14 Trial Tr., p. 108 (Dkt. 7-6). Huffman then spoke to Petitioner who initially denied being on Hudson Street that day, but then admitted that he had been there and was involved in a verbal confrontation. Id. at 111. Petitioner denied having a gun. Id. at 112. Huffman arrested Petitioner and took him into custody. 1/9/14 Trial Tr., p. 59 (Dkt. 7-7).

Petitioner's wife consented to a search of their home and car. Id. at 59, 65. Officer Huffman recovered a partially filled box of nine-millimeter bullets, which was missing six bullets, from the laundry room. Id. at 60-61. The police never found the gun, and they did not find any shell casings or bullets at the scene. Id. at 67.

Following his convictions and sentencing, Petitioner pursued an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review, detailed below. The court denied relief on those claims and affirmed his convictions and sentences. People v. Wright, No. 320619, 2015 WL 3389513, *1-4 (Mich. Ct. App. May 26, 2015) (per curiam).

Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Wright, 873 N.W.2d 107 (2016).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I. Insufficient evidence or motion for directed verdict should have been granted.

II. Resentencing for felon in possession and carrying a concealed weapon.

Respondent has filed an answer to the petition contending that it should be denied. Petitioner has filed a reply to that answer.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh, 521 U.S. at 333, n. 7); Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments

5

or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id; see also White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, __ U.S. __, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, __ U.S. __, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam)); Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); see also Mitchell,

540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam); see also Lopez v. Smith, __ U.S. __ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. ANALYSIS

#### A. Sufficiency of the Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence of his guilt, particularly of his intent, to support his assault with intent to commit murder conviction and the trial court should have granted a directed verdict. Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002). Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the [fact-finder] – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." Matthews, 319 F.3d at 788-89.

Under Michigan law, the elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder. See Warren v. Smith, 161 F.3d 358, 361 (6th Cir. 1998) (citing Michigan law); People v. Henderson, 854 N.W.2d 234, 240 (Mich. Ct. App. 2014); People v. Ericksen, 793 N.W.2d 120, 122 (Mich. Ct. App. 2010); Mich. Comp. Laws § 750.83. Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, People v. Nowack, 614 N.W.2d 78, 81 (Mich. 2000); People v. Jolly, 502 N.W.2d 177, 180 (Mich. 1993), including the identity of the perpetrator, Dell v. Straub, 194 F. Supp. 2d

8

629, 647 (E.D. Mich. 2002), and intent or state of mind. People v. Dumas, 563 N.W.2d 31, 34 (Mich. 1997). The use of a lethal weapon supports an inference of an intent to kill. People v. Turner, 233 N.W.2d 617, 620 (Mich. Ct. App. 1975); see also People v. Carines, 597 N.W.2d 130, 135 (Mich. 1999).

Applying the foregoing standards, the Michigan Court of Appeals denied relief on this claim finding that the prosecution presented sufficient evidence to support Petitioner's assault with intent to commit murder conviction. The court explained in relevant part:

> With regard to the first element, "[a]n assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery ." People v. Starks, 473 Mich. 227, 234; 701 NW2d 136 (2005). In this case there was testimony presented by several witnesses, including the victim and the victim's wife, that defendant pointed a gun at the victim and pulled the trigger. The victim and his wife also testified that, before pulling the trigger, defendant twice told the victim that he was going to kill him and his children. Clearly, pointing a gun at someone and pulling the trigger places the intended target of the shooting in a "reasonable apprehension of receiving an immediate battery." Starks, 473 Mich. at 234. Similarly, with regard to the third element, there can be no question that had defendant successfully shot the victim in the head or chest, where the witnesses testified defendant pointed the gun, death would have been the probable result, and that death would have been murder as there was no evidence that defendant's actions would be justified.
>
> With regard to the second element of AWIM, intent, it is defendant's contention that the prosecution did not provide sufficient evidence to permit the jury to find this element beyond a reasonable doubt. We disagree. In Henderson, 306 Mich. App at 11, we noted that
>
>> intent may be inferred from circumstantial evidence. [People v. McGhee, 268 Mich. App 600, 623; 709 NW2d 595 (2005).] Indeed, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind...." [People v. Kanaan, 278 Mich. App 594, 622; 751 NW2d 57 (2008).] Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon. See [People v. Carines, 460 Mich. 750, 759; 597 NW2d 130 (1999).] Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may

> reflect a consciousness of guilt. People v. Unger, 278 Mich. App 210, 223, 225–227; 749 NW2d 272 (2008). [Emphasis added.]
>
> In this case, defendant pulled out a gun, pointed it at the victim's head (or chest), and pulled the trigger. A gun is clearly a deadly weapon. Defendant also told the victim that he was going to kill him and his children at least two times. Further, after the victim got the gun away from defendant, defendant fled the scene, lied about his whereabouts when questioned by the police, and also got rid of the gun as it was not located in either the vehicle or defendant's house. See Henderson, 306 Mich. App at 11, citing Unger, 278 Mich. App at 223, 225–227.
>
> Based on all of this evidence, we conclude that there was sufficient evidence of intent to permit the jury to find this element, as well as the other two elements of AWIM, beyond a reasonable doubt.

Wright, 2015 WL 3389513 at *1-2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial testimony of the eyewitness, particularly Nyang and his wife, established that Petitioner threatened to kill Nyang and his children, that Petitioner pulled out a gun and pointed the gun at Nyang's head, that Petitioner pulled the trigger, but the gun jammed, that the parties fought, and that Petitioner fled the scene, disposed of the gun, and lied about his conduct when questioned by the police. Such testimony was sufficient to prove that the Nyang had a "reasonable apprehension of receiving an immediate battery," that Petitioner acted with the requisite intent to kill, and that if Petitioner's firing of the gun had been successful, death would have been the probable result and that it would have been murder since there was no evidence that Petitioner's conduct was justified. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. See Tucker v. Palmer, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).

Additionally, contrary to Petitioner's assertions, a conviction for assault with intent to commit murder does not require the use of a firearm, let alone an operable one; nor does it require injury or death. See People v. McRunels, 603 N.W.2d 95, 102 (Mich. Ct. App. 1999); People v.

Tolbert, No. 298159, 2011 WL 6186840, *1 (Mich. Ct. App. Dec. 13, 2011) ("assault with intent to commit murder does not require a certain type of weapon"); see also People v. Peals, 720 N.W.2d 196, 199 (Mich. 2006) (felony firearm conviction does not require proof that the firearm was "operable" or "reasonably or readily operable" but requires only that the weapon "be of a type that is designed or intended to propel a dangerous projectile"). Voluntary intoxication of alcohol or a controlled substance is no longer a defense to a crime under Michigan law. See Mich. Comp. Laws § 768.37 (effective Sept. 1, 2002). Moreover, there is no evidence that Petitioner was involuntarily intoxicated or that he was so intoxicated that he was unable to form the specific intent to kill as necessary to support his assault with intent to murder conviction.

Petitioner challenges the jury's credibility determinations and the inferences that the jury drew from the evidence at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002); Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed an assault with intent to commit murder.

Lastly, to the extent that Petitioner asserts that the trial court erred in denying a directed verdict motion under state law, he fails to state a claim upon which federal habeas relief may be granted. See King v. Trippett, 27 F. App'x 506, 510 (6th Cir. 2001) (upholding district court's ruling that petitioner failed to state a habeas claim where he alleged that trial court erred in

denying directed verdict motion on armed robbery charge). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Habeas relief is not warranted on this claim.

**B. Sentencing Claim**

Petitioner next asserts that he is entitled to habeas relief because the trial court failed to score his concealed weapon and felon in possession offenses and departed above the applicable guidelines by imposing the same sentence as imposed for his assault with intent to commit murder conviction. Respondent contends that this claim is not cognizable upon habeas review and that it lacks merit.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. Townsend v. Burke, 334 U.S. 736, 741 (1948); Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims that arise out of a state trial court's sentencing decision are not cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. Lucey v. Lavigne, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences for carrying a concealed weapon and felon in possession are within the statutory maximums for a fourth habitual offender. See Mich. Comp. Laws §§ 750.227(2); 750.224f, 769.12 (providing that the offenses are punishable by life

imprisonment or a lesser term). Consequently, they are insulated from habeas review absent a federal constitutional violation.

The Michigan Court of Appeals denied relief on this claim finding that resentencing was not required because any error in scoring/not scoring the guidelines as to the carrying a concealed weapon and felon in possession convictions was harmless, given that the sentences are concurrent to his assault with intent to commit murder sentence. Wright, 2015 WL 3389513 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner's claim that the trial court failed to score the sentences for his carrying concealed weapon and felon in possession convictions and/or improperly departed from the guideline range concerns a state law issue, which is not cognizable on habeas review. See Austin v. Jackson, 213 F.3d 298, 301 (6th Cir. 2000) (upward departure from state sentencing guidelines does not implicate federal due process rights); Cheatham v. Hosey, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue which is not cognizable on federal habeas review); Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is not cognizable on federal habeas review); Welch v. Burke, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (same). As discussed, state courts are the final arbiters of state law and the federal courts will not intervene in such matters. Lewis, 497 U.S. at 780; Oviedo, 809 F.2d at 328; see also Bradshaw, 546 U.S. at 76; Sanford, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. Estelle, 502 U.S. at 67-68. Petitioner fails to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Petitioner's claims lack merit and that he is not entitled to federal habeas relief. Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his claims. Accordingly, the Court denies a certificate of appealability. The Court also denies Petitioner leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. See Fed. R. App. P. 24(a).

SO ORDERED.

Dated: April 30, 2018          s/Mark A. Goldsmith
Detroit, Michigan            MARK A. GOLDSMITH
                                       United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 30, 2018.

                                         s/Karri Sandusky
                                         Case Manager